DEBORAH M. SMITH
Acting United States Attorney

AUDREY J. RENSCHEN
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
Phone:(907) 271-5071
Fax: (907) 271-1500
Email: audrey.renschen@usdoj.gov


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:05-cr-064-RRB |
| | ) | |
| Plaintiff, | ) | **UNITED STATES'** |
| | ) | **TRIAL BRIEF** |
| vs. | ) | |
| | ) | |
| JAIMEY KENT SAPP, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The jury trial is scheduled to begin on January 30, 2006.  The government's

case is expected to take two to three days.  There have been no pretrial motions

filed.  The defendant is on pretrial release, but if he is convicted, the government

will seek immediate remand under 18 U.S.C. §§  3143(a)(2) and 3142(f)(1)(A).

I.    **STATEMENT OF THE CASE**

The defendant is charged with four crimes: two counts of using the Internet to attempt to knowingly persuade, induce, and entice an individual whom he believed was 14 years old, to engage in an unlawful sexual act, in violation of 18 U.S.C. § 2422(b), one count of using the Internet to attempt to knowingly transfer obscene material to a minor, whom he believed to be 14 years old, in violation of 18 U.S.C. 1470, and one count of using the Internet to knowingly transfer obscene material to a minor, whom he believed to be 14 years old, in violation of 18 U.S.C. 1470.

**Sapp Used the Internet to Contact an Apparent 14-year-old Girl**

The United States expects to prove that beginning on March 10, and continuing until July 12, 2005, Jaimey Kent Sapp, a 32 year old man, used  the Instant Messenger service Yahoo Messenger, and the screen name "local_nawty_boy", to contact "hot_jackie_14_in_alaska", a person he learned was a fourteen year old Anchorage girl.  Almost immediately, during the first conversation, Sapp engaged her in explicitly sexual "chat", asking if she had ever experienced sex, or masturbated, and then directing her how to masturbate, and offering to have sexual intercourse with her.  Sapp continued the conversations for over 4 months.  At various time, Sapp cautioned the girl to keep their Internet

conversations and potential encounters secret, warning her that he could go to jail because of her youth.

## Sapp Transferred an Obscene Picture to the Girl He Believed Was 14

On March 23, 2005, in the course of Sapp's sexual enticement of "hot_jackie_14_in_alaska", Sapp transferred a picture of an adult male exposing his erect penis – which picture appears to be the defendant.

## Sapp Arranged to Meet the Girl to "Devirginize" Her

During June 2005, Sapp groomed the girl he believed was 14, by offering to teach her about sex, to get together with her, to actually have sex with her, "to take it slow and teach you." In addition to providing tutorials on how he could help her lose her virginity, Sapp arranged to meet her at a playground to follow through on his plans. Sapp did not appear for the planned first meeting. After failing to appear, he apologized profusely, explaining his fear of being caught, and going to jail.

By mid-July, Sapp overcame his fear of being caught and going to jail. He again contacted "hot_jackie_14_in_alaska" on the Internet, and asked her to meet him at a playground, so he could pick her up and have sex with her. After arranging the time and place, Sapp appeared there on July 12, 2005, and while looking around the playground, sent a text message to "hot_jackie_14_in_alaska"

saying "I'm here, where are you?".  Minutes later, Sapp was arrested.

"hot_jackie_14_in_alaska"  was actually an undercover officer, Senior

Special Agent Kevin Laws (SSA Laws), of Immigration and Customs Enforcement

(ICE), who was investigating adults using the Internet to sexually exploit children.

SSA Laws arrested Sapp on July 12, 2005, when he arrived at Oceanview

Elementary School to meet a fourteen year old girl, "Jackie".

After Sapp was arrested, agents conducted a search of his person and his

workplace.  Sapp had a thumb drive, a BlackBerry, and a cell phone with him.

Agents found several computers that Sapp used in his workplace.  Subsequent

searches of those items revealed evidence of electronic chats and contacts between

the defendant and "hot_jackie_14_in_alaska".   There was also evidence that Sapp

engaged in numerous other online and offline communications.

## Sapp's Enticement of Another 14 Year Old Girl, and Transfer of Obscene Material

Using the screen name "barebackcountryboy", Sapp contacted another

fourteen year old Anchorage girl, Jane Doe #1, on February 11, 2005, attempting

to entice her to have sex, and sending her a picture of his penis.

**Conversation joined at Fri Feb 11 21:25:29 2005.**

**barebackcountryboy (Fri Feb 11 21:25:29 2005): youre a cutie**
**qt_thang0909 (Fri Feb 11 21:25:42 2005):** look at mi pic dogg
**barebackcountryboy (Fri Feb 11 21:26:01 2005):** i did
**qt_thang0909 (Fri Feb 11 21:26:12 2005):** ohh
**qt_thang0909 (Fri Feb 11 21:26:13 2005):** i c

**qt_thang0909 (Fri Feb 11 21:26:14 2005):** lol
**barebackcountryboy (Fri Feb 11 21:26:22 2005):** naughty girl?
**qt_thang0909 (Fri Feb 11 21:26:42 2005):** once in a while
**barebackcountryboy (Fri Feb 11 21:26:52 2005):** sexually naughty?
**qt_thang0909 (Fri Feb 11 21:27:00 2005):** once is a while
**barebackcountryboy (Fri Feb 11 21:27:21 2005):** want a big dick?
**qt_thang0909 (Fri Feb 11 21:27:35 2005):** how old are you?
**barebackcountryboy (Fri Feb 11 21:27:40 2005):** 22
**qt_thang0909 (Fri Feb 11 21:27:48 2005):** ya know imma 14
**barebackcountryboy (Fri Feb 11 21:28:01 2005):** does it bother you im 22?
**qt_thang0909 (Fri Feb 11 21:28:18 2005):** no
**barebackcountryboy (Fri Feb 11 21:28:31 2005):** can you see my pic over there?
**barebackcountryboy (Fri Feb 11 21:28:36 2005):** ~~~~~~~~~~~>>>>>
**qt_thang0909 (Fri Feb 11 21:28:56 2005):** no...
**barebackcountryboy (Fri Feb 11 21:29:27 2005):** click on the figure over there
**qt_thang0909 (Fri Feb 11 21:30:05 2005):** you like young gurls?

**Conversation joined at Fri Feb 11 21:32:46 2005.**

**barebackcountryboy (Fri Feb 11 21:32:46 2005): sure, why?**
**barebackcountryboy (Fri Feb 11 21:32:56 2005):** like older guys?
**qt_thang0909 (Fri Feb 11 21:32:57 2005):** i dont know
**qt_thang0909 (Fri Feb 11 21:33:02 2005):** not really
**qt_thang0909 (Fri Feb 11 21:33:03 2005):** lol
**qt_thang0909 (Fri Feb 11 21:33:10 2005):** i thik they are nasty lookin
**qt_thang0909 (Fri Feb 11 21:33:11 2005):** lol
**qt_thang0909 (Fri Feb 11 21:33:18 2005):** no offence
**barebackcountryboy (Fri Feb 11 21:33:19 2005):** lol
**barebackcountryboy (Fri Feb 11 21:33:23 2005):** it all good
**barebackcountryboy (Fri Feb 11 21:33:30 2005):** like nawty pics?
**qt_thang0909 (Fri Feb 11 21:33:49 2005):** i dunno
**qt_thang0909 (Fri Feb 11 21:33:56 2005):** havent realy ever saw one
**barebackcountryboy (Fri Feb 11 21:34:07 2005):** wanna see my equipment?
**qt_thang0909 (Fri Feb 11 21:34:42 2005):** uummm shure
**barebackcountryboy (Fri Feb 11 21:35:36 2005):** Look over there~~~~~~~~~~~~~~~~>>>
**qt_thang0909 (Fri Feb 11 21:35:57 2005):** lol
**barebackcountryboy (Fri Feb 11 21:36:06 2005):** like?
**qt_thang0909 (Fri Feb 11 21:36:12 2005):** not really
**qt_thang0909 (Fri Feb 11 21:36:13 2005):** lol
**barebackcountryboy (Fri Feb 11 21:36:17 2005):** ok
**barebackcountryboy (Fri Feb 11 21:36:18 2005):** lol
**qt_thang0909 (Fri Feb 11 21:36:56 2005):** i never did anything sexual befroe
**qt_thang0909 (Fri Feb 11 21:36:59 2005):** before
**qt_thang0909 (Fri Feb 11 21:37:00 2005):** lol
**qt_thang0909 (Fri Feb 11 21:37:04 2005):** thas why
**barebackcountryboy (Fri Feb 11 21:37:10 2005):** ahh, youre a virgin
**qt_thang0909 (Fri Feb 11 21:37:44 2005):** yeah
**qt_thang0909 (Fri Feb 11 21:37:46 2005):** well
**barebackcountryboy (Fri Feb 11 21:37:55 2005):** nothin wrong with that
**qt_thang0909 (Fri Feb 11 21:38:42 2005):** i knwo
**qt_thang0909 (Fri Feb 11 21:38:54 2005):** im not gonna have sex for a long time
**barebackcountryboy (Fri Feb 11 21:39:20 2005):** i asked if you were sexually nawty and you said once in awhile, so, i assumed you had

**Conversation joined at Fri Feb 11 21:40:09 2005.**

**qt_thang0909 (Fri Feb 11 21:40:09 2005): well ya see i give bjs and stuff**
**qt_thang0909 (Fri Feb 11 21:40:13 2005): but never sex**
**barebackcountryboy (Fri Feb 11 21:40:25 2005):** lmao...ok **(FYI: lmao=laughing my ass off)**
**barebackcountryboy (Fri Feb 11 21:40:38 2005):** you ever been eaten?
**qt_thang0909 (Fri Feb 11 21:40:50 2005):** eeww i think thats nasty
**qt_thang0909 (Fri Feb 11 21:40:52 2005):** no
**barebackcountryboy (Fri Feb 11 21:41:23 2005):** lmao...you'd suck a guys cock, but you think you being eaten is nasty?
**qt_thang0909 (Fri Feb 11 21:41:46 2005):** YAH
**barebackcountryboy (Fri Feb 11 21:41:51 2005):** lmao
**barebackcountryboy (Fri Feb 11 21:42:00 2005):** will you suck mine?
**barebackcountryboy (Fri Feb 11 21:42:00 2005):** lol
**qt_thang0909 (Fri Feb 11 21:42:21 2005):** no
**barebackcountryboy (Fri Feb 11 21:42:33 2005):** why? lol
**barebackcountryboy (Fri Feb 11 21:43:13 2005):** its just another dick...lol

## Potential Trial Exhibits

- text files and screen captures of online conversations and offline messages between Sapp's screen names "local_nawty_boy" or "barebackcountryboy", and "hot_jackie_14_in_alaska";

- picture that Sapp requested, and was sent, of "hot_jackie_14_in_alaska";

- pictures of Sapp, that he transferred to "hot_jackie_14_in_alaska" using his Yahoo profile page, which pictures were also found on Sapp's thumb drive when he was arrested;

- pictures of a white male's erect penis that were transferred to "hot_jackie_14_in_alaska" using Sapp's  Yahoo profile page, which pictures were also found on Sapp's thumb drive when he was arrested;

- text files of online conversations between Sapp's screen name, "barebackcountryboy", and ten other girls who represented that they were 14

or 15 years old;

- profile page of Jane Doe #1, and link found on Sapp's work computer;

- other items and/or documents connected with Sapp, his work computer, his thumb drive, his screen names "local_nawty_boy" or "barebackcountryboy", that were used to identify him, or that connect him to sexually explicit conversations with apparent children;

- other items and/or documents as they become known and/or relevant.

## Potential Trial Witnesses

Testimony from law enforcement personnel who investigated the case:

- SSA Kevin Laws

- SSA Russell Perras

- SA Alan Vanderploeg

- SA Michael Thoreson

- Detective Kevin Vandergrif

Testimony from lay witnesses:

- Yahoo representative

- Ben Kainer

- Jane Doe #1

- as located, other children that Sapp contacted, using his screen names

"local_nawty_boy" or "barebackcountryboy"

## II.    STATEMENT OF THE LAW

### A.    The Elements for Attempted Sexual Enticement of a Child Using the Internet

In United States v. Meek, 366 F.3d 705 (9th Cir. 2004), a case in which a defendant tried to entice a child who was really an undercover officer, the Ninth Circuit set out the elements of 18 U.S.C. 2422(b), as they apply to an attempted child enticement with an undercover agent.  The Court noted:

> From the text of the statute, the elements of criminal liability are manifest:  a person must "knowingly" (1) actually or attempt to (2) persuade, induce, entice, or coerce (3) a person under 18 years of age (4) to engage in sexual activity that would constitute a criminal offense.  Following our canons of statutory interpretation, it is apparent that the term "knowingly" refers both to the verbs-- "persuades, induces, entices, or coerces"--as well as to the object--"a person who has not achieved the age of 18 years."  (Citations omitted)

> The statute requires mens rea, that is, a guilty mind.  The guilt arises from the defendant's knowledge of what he intends to do.  In this case, knowledge is subjective--it is what is in the mind of the defendant.  Thus, a jury could reasonably infer that Meek knowingly sought sexual activity, and knowingly sought it with a minor.  That he was mistaken in his knowledge is irrelevant.  Meek possessed the guilty mind required by the statute.

Id. at 718.

> Applying our interpretation of § 2422(b), we observe that Meek's conduct fell squarely within our definition of criminal attempt. Consistent with the Fifth and Eleventh Circuits, our precedent counsels that an attempt conviction requires evidence that a defendant

"intended to violate the statute" and "took a substantial step toward completing the violation." United States v. Nelson, 66 F.3d 1036, 1042 (9th Cir.1995);  see also United States v. Farner, 251 F.3d 510, 513 (5th Cir.2001);  United States v. Root, 296 F.3d 1222, 1227-28 (11th Cir.2002).

Meek, 366 F.3d at 721.

### B.    Sexual Activity Is Not an Element of the Crime

Even a completed child enticement under 18 U.S.C. 2422(b) does not require that a defendant actually engage in sexual activity.  As noted below in section III, F., the applicability of proposed defenses depends upon an accurate understanding of the elements.  The government does not have to prove that a defendant completed the sexual act or tried to engage in the sexual act.  Section 2422(b) imposes criminal liability on a person who "knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years," to engage in . . . any sexual activity for which a person can be charged, "or attempts to do so."  18 U.S.C. § 2422(b).  The core of that statute is the persuading of the minor, or the attempt to do so.  United States v. Dhingra, 371 F.3d 557, 561 (9th Cir. 2004).

The plain language of the statute makes clear that the relevant inquiry is the conduct of the defendant.  Id.  The conduct that the statute criminalizes is persuading, inducing, enticing, or coercing illegal sexual activity, or attempting to do so.  Id.  There is no need to engage in sexual activity, nor is there any need to

try to engage in sexual activity.  Id.  Instead, persuading, or attempting to persuade the minor to engage in sex completes the crime.   Dhingra, 371 F.3d at 561.  The United States contends that given the content of the Instant Messaging (IM) conversations, that the Defendant attempted to persuade, induce or entice "Jackie" and "Jane Doe #1" to engage in unlawful sexual acts.

### C.     Facility of Interstate Commerce

Telephone or internet correspondence is considered a facility or means of interstate commerce, whether it used in the traditional way, or, whether it is used in conjunction with a computer and modem.  United States v. Dhingra, 371 F.3d 557, 560-61 (9th Cir. 2004); United States v. Schnepper, 302 F.Supp.2d 1170, 1176 (9th Cir. 2004).  As long as electrical or oral communications travel between one state and another, there has been use of a facility or means of interstate commerce. United States v. Lynch, 207 F.Supp. 2d 1133, 1136 (D. Mont., 2002).  In the Dhingra case, the Ninth Circuit upheld the jury's decision finding the defendant guilty of using the internet (AOL Instant Messenger) to entice a minor into engaging in sexual activity in violation of 18 U.S.C. § 2242(b).  Therefore, the Ninth Circuit has clearly found that the definition of "facility or means of interstate commerce" includes the Internet and Instant Messenger services.  Dhingra, 371 F.3d at 561.

D.    **The Elements for Attempted Transfer of Obscene Material to a Child Using the Internet**

In order to prove a *completed* violation of 18 U.S.C. § 1470, the

Government must prove:

1.    that the defendant knowingly used the mail or any means or facility of interstate commerce to transfer obscene matter;

2.    that the defendant knew that he was transferring obscene matter to an individual less than 16 years old;

3.    that the materials in question are obscene matter; and

4.    that the defendant knew at the time of the transfer the general nature of the contents of the matter.[1]

In order to prove an *attempted* violation of 18 U.S.C. § 1470, the

Government must prove:

1.    that the defendant intended to commit the offense of transfer of obscene material to a minor; and

2.    that the defendant did an act constituting a substantial step towards the commission of that crime which strongly corroborates the defendant's criminal intent.[2]

E.    **The Obscenity Test**

Material is obscene when:

---

[1]See government's proposed jury instructions for a violation of 18 U.S.C. § 1470.

[2]See government's proposed jury instruction for an attempted violation of 18 U.S.C. § 1470.

1.      the average person, applying contemporary adult community

        standards, would find that the work, taken as a whole, appeals

        to the prurient interest; and

2.      the average person, applying contemporary adult community

        standards, would find that the work depicts or describes sexual

        conduct in a patently offensive way; and

3.      a reasonable person would find that the work, taken as a whole,

        lacks serious literary, artistic, political, or scientific value.

## III.    EVIDENTIARY ISSUES

### A.    Stipulations

The parties have orally agreed to a stipulation regarding interstate

commerce.  That stipulation will eliminate a Yahoo employee having to travel from

the Lower 48 to testify that Yahoo! Internet chat rooms and Instant Messaging

between parties in Alaska would necessitate travel in interstate commerce.  The

written stipulation has not yet been finalized.

### B.    Expert Testimony

Expert opinions are admissible if they will assist the trier of fact to

understand the evidence or determine a fact in evidence.  Rule 702, Fed. R. Evid.

The United States will introduce evidence from SSA Laws, who is a Computer

Forensic Expert.  His testimony will describe the preservation of electronic data, and the forensic analyses conducted on Sapp's laptop work computers, and USB external thumb drive, and the computer used by Jane Doe #1.

The United States has given notice of its intent to elicit SSA Laws expert testimony, and the defense was provided with his resume, compact discs and written reports containing forensic analyses finding, among other things, the chats and photographs exchanged between Sapp and fourteen year old, "hot_jackie_14_in_alaska" preserved on SSA Laws' computer and on Sapp's laptop work computer and a USB external thumb drive, and remnants of the contacts Sapp made in connection with Jnae Doe #1.

The United States intends to present SSA Laws' expertise to teach the jury about the technological use of a computer, the Internet and specifically Yahoo.  He will also explain the presence or absence of electronic data evidence from the Defendant's computers, or other electronic devices.

The United States believes his testimony is admissible not only as an expert witness under FRE 702, but also as a lay witness, pursuant to FRE 701.  See United States v. Caballero, 277 F.3d 1235, 1246-1247 (10th Cir. 2002);  United States v. Figueroa-Lopez, 125 F.3d 1241 (9th Cir. 1997); United States v. Yazzie, 976 F.2d 1252, 1254-6, (9th Cir. 1992); Kickapoo Oil Co. v. Clark Oil & Refining

<u>Corp.</u>, 788 F. 2d 11 (9th Cir. 1985).

If the parties are unable to reach a stipulation as to Yahoo chat rooms and instant messaging and their functioning in interstate commerce, a representative from that company will testify as an expert witness on those processes.

## C.      <u>Statements of the Defendant and Local Rule 2 Notice</u>

  Pursuant to Local Rule 2, the government gives notice that it will admit statements made by the defendant to law enforcement witnesses.  Summaries of those statements were previously discovered to defense counsel. Such statements are admissible against defendants and are not hearsay.  Fed. R. Evid. 801(d)(2) Statements by a defendant offered against him are admissible as admissions by a party-opponent.  Fed. R. Evid. 801(d)(2).

When the government admits some or a portion of a defendant's prior statements, however, the defendant may not introduce his entire out-of-court statements because such statements are hearsay when offered by the defendant. Fed. R. Evid. 801(d)(2);  <u>United States v. Burreson</u>, 643 F.2d 1344, 1349 (9th Cir.), <u>cert. denied</u>, 454 U.S. 847 (1981), and <u>cert. denied sub nom.</u>, <u>Channell v. United States</u>, 454 U.S. 830 (1981); <u>United States v. Willis</u>, 759 F.2d 1486, 1501 (11th Cir.), <u>cert. denied</u>, 474 U.S. 849 (1985).

A defendant's silence in response to a statement is admissible as an

adoptive admission upon a showing that the defendant actually heard, understood, and acceded to the statement.  United States v. Monks, 774 F.2d (9th Cir. 1985).

Documents which have been signed by a defendant constitute admissions or adoptive admissions of the defendant under Fed. R. Evid. 801(d)(2)(A),(B) and are independently admissible on that basis.  United States v. Moran, 759 F.2d 777, 786 (9th Cir. 1985), cert. denied, 474 U.S. 1102 (1986);  United States v. Smith, 609 F.2d 1294, 1301 n.7 (9th Cir. 1979);  Pillsbury Co. v. Cleaver-Brooks, 646 F.2d 1216, 1218 (8th Cir. 1981).

Documents such as computer logs, whose foundational requirements for relevance and accuracy have been established, are admissible.  The foundational "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Fed.R.Evid. 901(a); see also United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir.1991). "The government need only make a prima facie showing of authenticity, as '[t]he rule requires only that the court admit evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.' "  United States v. Black, 767 F.2d 1334, 1342 (9th Cir.1985) (quoting 5 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 901(a) [01], at 901-16 to -17 (1983)).  The

government must also establish a connection between the proffered evidence and the defendant.

United States v. Catabran, 836 F.2d 453, 458 (9th Cir.1988) ("Any question as to the accuracy of the [computer] printouts ... would have affected only the weight of the printouts, not their admissibility."); See United States v. Soulard, 730 F.2d 1292, 1298 (9th Cir.1984) ("[O]nce adequate foundational showings of authenticity and relevancy have been made, the issue of completeness then bears on the Government's burden of proof and is an issue for the jury to resolve."). United States v. Tank, 200 F.3d 627, 630 (9th Cir. 2000).

## D.    **Evidence of Defendant's Prior Conduct**

Rule 404(b), Fed. R. Evid., permits the use of evidence of other crimes, wrongs or acts as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, subject to the relevance requirements of Rules 402 and 403.

> Evidence should not be considered "other crimes" evidence when " 'the evidence concerning the ["other"] act and the evidence concerning the crime charged are inextricably intertwined.' " United States  v. Soliman, 813 F.2d 277, 279 (9th Cir.  1987) (quoting United States v. Aleman, 592 F.2d 881, 885 (5th Cir.1979)) (alteration in original). The policies underlying rule 404(b) are inapplicable when offenses committed as part of a "single criminal episode" become other acts simply because the defendant "is indicted for less than all of his actions." Id.

<u>United States  v. Williams</u>, 989 F.2d 1061, 1070 (9th Cir. 1993).

Here, the United States intends to use evidence of Sapp's chats, found on his work laptop computer with ten other self-described fourteen and fifteen  year old girls, during an eight month period overlapping his chats with "hot_jackie_14_in_alaska".  The chats with other fourteen and fifteen year old girls, and their testimony, will be offered as evidence of Sapp's motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident.  That evidence may be considered inextricably intertwined with the evidence of Sapp's enticement of "hot_jackie_14_in_alaska" and "qt_thang0909", but in any case, is admissible under Fed. R. Crim P.  404(b) , to show the specific traits outlined above.

### E.    <u>Reciprocal Discovery Issues</u>

Pursuant to Rule 16, Fed. R. Crim. P., all parties to the instant action have been under an obligation of reciprocal discovery.  The United States has provided all discoverable items to the defendant and his attorneys.  The defendant has had ample access to inspect all items of the physical evidence.   As of the present date, the United States has yet to receive a single document or item in discovery from the defendant.  To the extent that the defendant attempts to introduce any evidence not provided to the United States pursuant to his obligations under Rule 16(b), the

government will seek a preclusion order.  See Taylor v. Illinois, 484 U.S. 400, 108

S.Ct. 646 (1988) [upholding constitutionality of preclusion of defense witness

withheld from prosecution in violation of discovery rules].

### F.      Limits of Relevant Defenses

Rule 403, Fed. R. Evid., provides that relevant evidence "may be excluded

if its probative value is substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury, or by considerations of undue

delay, waste of time, or needless presentation of cumulative evidence."  See also,

United States v. Brannon, 616 F.2d 413, (9th Cir. 1980), cert. denied, 447 U.S.

908.  The trial court has broad discretion in determining admissibility under Rule

403.  United States v. Moore, 552 F.2d 1068, 1079 (9th Cir. 1975), cert. denied,

423 U.S. 1049 (1976).

While plaintiff cannot reasonably anticipate all possible defenses the

defendant may wish to put forward, the government would simply note three that

do not constitute legally relevant defenses, but which may be offered by the

defendant in attempts to confuse the issues or mislead the jury: (1) factual

impossibility; (2) abandonment, withdrawal, renunciation; and (3) entrapment.

### 1.      Factual Impossibility Is Not an Allowable Defense

Since the United States is contending that Sapp attempted to violate 18

U.S.C.§ 2422(b) and 18 U.S.C. 1470, the United States must prove that he did something which was a substantial step toward committing each of those crimes. The fact that Counts 1 & 2 could not be completed because an actual child was not directly involved is irrelevant under Ninth Circuit law.

In United States v. Meek, 366 F.3d 705 (9th Cir. 2004), Meek engaged a detective, disguised as a minor boy, in sexually graphic conversations, discussing the possibility of a future sexual encounter. Id. at 710.  Over the course of a month, a detective and Meek had several conversations in which Meek continued to seek a sexual encounter with the boy. Id.  Posing as the boy, a detective agreed to meet Meek at a local school for a sexual encounter. Id.  Meek was subsequently arrested upon arrival at the school. Id.  During their chats, the disguised detective explicitly dropped obvious clues as to age, like parental supervision, discussion of school, and hiding Meek's contact information in his locker at school. Id. at 720. Meek's extensive sexual dialog, his repeated sexual references as to what Meek would do when he met the boy, and Meek's travel to meet the boy at a local school, all showed that he took a substantial step toward committing the 18 U.S.C. 2422(b) crime. Id.

Just as in Meek, the United States will prove that Sapp's intent was evidenced by the "substantial steps" he took towards the commission of the crimes.

Sapp talked to "Jackie" as if she was a fourteen year old girl. Sapp's extensive computer dialog bent on curing her sexual naivete, his request for Jackie's photograph, his repeated explicitly sexual references about what Sapp would do when he got together with Jackie, how he could go to jail for 20 years because of "stupid state laws", and get in trouble for "persuading"and "enticing" a 14 year old, Sapp's directions to Jackie to keep everything secret, his transfer of a picture depicting a male's erect penis, all mark his conduct as criminal in nature.

As specifically noted in <u>Meek</u>, such conduct is what is relevant for the determination of Sapp's guilt.

> In short, § 2422(b) criminalizes the attempt to induce a minor to engage in sexual activity, and the defendant intended, and took steps toward, enticing the minor to engage in unlawful sexual acts with him. That he did not succeed is of no consequence. The fact that Meek was mistaken in his belief that he was corresponding with a minor does not mitigate or absolve his criminal culpability; the simple fact of Meek's belief is sufficient as to this element of a §2422(b) violation.

<u>Meek</u>, 366 F.3d at 720.

## 2.    <u>Abandonment, Withdrawal, Renunciation, Are Not Allowable Defenses</u>

The Government anticipates that the defense may attempt to interpose a defense of abandonment, which has also been labeled withdrawal or renunciation by some courts. See, <u>United States v. Shelton</u>, 30 F.3d 702, 705 (6th

Cir. 1995); United States v. Ball, 22 F.3d 197 (8th Cir. 1994),  United States v.

Gigante, 982 F.Supp 140, (E.D.N.Y. 1997)("[M]any courts confuse the concepts of

renunciation of criminal purpose, abandonment and withdrawal which the [Model

Penal] Code recognizes as distinct.")

When he was arrested, Sapp told the investigating agents that he had not

been chatting with anyone online for years. The Government believes Sapp may

try to revise his initial statements to police and use them as a springboard to argue

that he denied being involved with any online chatting because he was embarrassed

or ashamed.  Sapp may try to admit the chats, but argue that he really was not

interested in children, did not believe he was talking to a child, and furthermore,

that he is entitled to advance  abandonment, withdrawal, or renunciation as his

theory of the case.

However, such an argument would misinterpret the essential elements of

the crimes charged and run contrary to established law.  The essence or gravamen

of the crime of using a computer in an attempt to persuade or entice a minor to

engage in an illegal sexual act, as prohibited by 18 U.S.C. § 2422(b) and charged

in this case, is the intent to persuade or an attempt to persuade, as noted in United

States v. Meek, and United States v. Dhingra, in section II above.   The conduct

that the statute criminalizes is persuading, inducing, enticing, or coercing illegal

sexual activity.  There is no need to engage in sexual activity, nor is there any need

to try to engage in sexual activity. The core of 18 U.S.C. 2422(b) is the persuading

of the minor.    United States v. Dhingra, 371 F.3d 557, 561 (9th Cir. 2004).

In  United States v. Bailey, 228 F.3d 637, 639 (6th Cir. 2000), the

Defendant argued that to sustain a § 2422 conviction there must be proof of a

specific intent to commit the illegal sexual act rather than just an intent to persuade

or solicit the minor victim to engage in sexual acts.  In rejecting this argument, the

Sixth Circuit stated:

> While it may be rare for there to be a separation between the intent
> to persuade and the follow-up intent to perform the act after
> persuasion, they are two clearly separate and different intents and
> the Congress has made a clear choice to criminalize persuasion and
> the attempt to persuade, not the performance of the acts themselves.
> Hence, a conviction under the statute only requires a finding that
> the defendant had an intent to persuade or to attempt to persuade.

Id. at 639.

The Bailey court also stated that an individual "does not have a First

Amendment right to attempt to persuade minors to engage in illegal sext acts." Id.

Thus, if the Defendant argues that he had abandoned his intention to have sex with

Jackie before he was arrested, or with Jane Doe #1 before she ended the

conversation, that change of heart would not constitute a defense to the crime

charged.  On the contrary, Sapp committed the necessary acts with the necessary

*mens rea* before he signed off from his chats with Jackie and Jane Doe #1.

Abandonment simply is not a defense once an individual has committed all the acts

necessary to commit the charged offense with the requisite intent. <u>United States v.</u>

<u>Ball</u>, 22 F.3d 197, 199 (8th Cir. 1994).

It should also be noted that there is no definitive authority for such a

defense in the Ninth Circuit.  The Ninth Circuit has considered the defense of

abandonment with disfavor, see <u>United States v. Bussey</u>, 507 F.2d 1096, 1098 (9th

Cir. 1974)(holding that "a voluntary abandonment of an attempt which has

proceeded well beyond preparation, as here, will not bar a conviction for the

attempt"), and it may not recognize the defense at all.

Undersigned counsel could find no decision suggesting that this circuit has

ever recognized abandonment as a defense to the crime of attempt, nor does one

appear to exist.  Similarly, other circuits have either refused to recognize the

defense, see <u>United States v. Shelton</u>, 30 F.3d 702, 705-06 (6th Cir. 1994), or have

refrained from taking a position. See, e.g. <u>United States v. Bailey</u>, 834 F.2d 218,

227 (1st Cir. 1987); <u>United States v. McDowell</u>, 705 F.2d 426 (11th Cir. 1983),

reh'g denied, 714 F.2d 106 (11th Cir. 1983).

A failed attempt cannot be equated with a "complete renunciation of

criminal purpose." See, e.g. <u>United States v. Bussey</u>, 507 F.2d 1096, 1098 (9th Cir.

1974).   Such a defense ignores that a defendant may have taken the requisite

"substantial step" in furtherance of the crime, thus completing the attempt, before

deciding to renounce or abandon consummation of the offense.  For that reason,

the defense is not entitled to an abandonment instruction.

### (3)    <u>Entrapment</u>

The United States anticipates the Defendant may raise the defense of

entrapment at trial.  However, as the following analysis of relevant case law in the

Ninth Circuit clearly demonstrates, an entrapment defense is not applicable in this

case.

For government officers or employees to "originate a criminal design,

implant in an innocent persons's mind the disposition to commit a criminal act, and

then induce commission of the crime so that the Government may prosecute," is

entrapment.  <u>Jacobson v. United States</u>, 503 U.S. 540, 548 (1992) (where the court

found no evidence of predisposition where the government spent over two years

persuading defendant to buy child pornography because he would be fighting

censorship and infringement of individual rights).

However, merely providing the opportunity or facilities to commit a crime

is not entrapment and does not defeat prosecution.  <u>Id</u>.  Therefore, the defense of

entrapment "is designed to prevent the conviction of the unwary innocent induced

by government action to commit a crime.  It does not, however, protect the unwary

criminal."  <u>United States v. Skarie</u>, 971 F.2d 317, 320 (9th Cir. 1992).

The defense of entrapment has two elements.  A defense is established if

the defendant was: (1) induced to commit the crime by a government agent, and (2)

not otherwise predisposed to commit the crime.  <u>See</u> <u>United States v. Kessee</u>, 992

F.2d 1001, 1003 (9th Cir. 1993).  <u>See</u> <u>also</u> <u>United States v. Poehlman</u>, 217 F.3d

692, 697 (9th Cir. 2000); <u>United States v. Tucker</u>, 133 F.3d 1208, 1217 (9th Cir.

1998); <u>United States v. Manarite</u>, 44 F.3d 1407, 1417 (9th Cir. 1995); <u>United

States v. Skarie</u>, 971 F.2d 317, 320 (9th Cir. 1992).

A defendant is only required to present slight evidence on both of the

elements to create a factual issue for the jury to decide.  <u>Kessee</u>, at 1003 (although

defendant's credibility was questionable, he was entitled to an entrapment

instruction where his testimony, if true, could justify a finding of entrapment, and

where the government did not prove beyond a reasonable doubt that it did not

induce or the defendant was predisposed, thereby establishing a genuine issue of

fact for the jury).

Before the issue of entrapment may reach the jury the trial judge must

decide whether there is a genuine issue of fact for the jury.  The Ninth Circuit has

recognized that "[t]he evidence may be weak, insufficient, inconsistent, or of

doubtful credibility, but the defendant is entitled to an instruction unless the prosecution rebuts the evidence such that no rational jury could entertain a reasonable doubt as to either element." Id. at 1003 (internal quotations omitted).

### a.    The Defendant Must Demonstrate He Was Induced By The Undercover

Inducement is defined as a "repeated and persistent solicitation or persuasion which overcomes the defendant's reluctance." United States v. Simas, 937 F.2d 459, 462 (9th Cir. 1991) (internal quotations omitted) (the trial court did not err in refusing to give an entrapment instruction where a de novo review of the record indicated the evidence presented did not warrant an instruction) ; See also United States v. Manarite, 44 F.3d 1407, 1418 (9th Cir. 1995). Merely suggesting or providing an opportunity to commit a crime is not conduct amounting to inducement. Simas, at 462. Rather, "[i]nducement is government conduct that creates a substantial risk that an otherwise law-abiding person commit a crime, including persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on that need, sympathy or friendship." Manarite, at 1418.

For a defendant to be acquitted as a matter of law on the basis of entrapment, the defendant must show "undisputed evidence making it patently clear that an otherwise innocent person was induced to commit the illegal act...."

United States v. Garza Juarez, 992 F.2d 896, 908 (9th Cir. 1993) (even where a government agent initiated every contact and took the lead in negotiating for the sale of illegal weapons, no inducement occurred in absence of threats or offering additional cash as incentive).  The act of inducing must come from an individual acting on behalf of the government.  See United States v. Davis, 36 F.3d 1424, 1430 (9th Cir. 1994) (conflicting assertions of fact relevant to the issue of entrapment is a credibility question for the jury; failure of the instruction to state the government's burden to show predisposition was error that did not result in a miscarriage of justice).  See also Manarite, supra at 1418 (holding the trial court did not err in refusing to instruct the jury on entrapment defense where there was no evidence in the record to show the government induced her to commit a crime and this Circuit does not recognize the theory of "derivative entrapment" or inducement by a private party).

In United States v. Poehlman, 217 F.3d 692 (9th Cir. 2000), the Ninth Circuit found the defendant had been induced by the government to travel interstate to have sex with minor children.  After his wife divorced him and the Air Force forced him into early retirement, Poehlman frequently engaged in Internet searches and chats in an effort to find a suitable companion.  Specifically, he wanted to meet someone that would be open to alternative lifestyles and accept his

compulsion to cross-dress.  <u>Id</u>. at 695.  Poehlman eventually found and began

corresponding with a woman named Sharon when he responded to an ad she

placed.  Sharon indicated she was looking for someone who understood her

family's "unique needs" and preferred servicemen.  <u>Id</u>.  In answering the ad,

Poehlman indicated he was looking for a long-term relationship leading to

marriage and that he too had unique needs.  <u>Id</u>.  Poehlman was unaware that

Sharon was an undercover agent.

Sharon indicated she had three girls, ages seven, ten, and twelve, that

needed to have help with their "special education" since the girls had no father.  <u>Id</u>.

at 695-97.  Poehlman eventually disclosed his "unique needs," but that he had

strong family values and would treat her children as his own.  <u>Id</u>. at 696.  Sharon

repeatedly indicated she was not looking for a mate for herself, but was looking for

a "special man teacher" for her girls.  <u>Id</u>.  Poehlman repeatedly indicated he did not

understand what she meant by a "special man teacher" and continually expressed

his interest in her.  <u>Id</u>.  Only once Sharon made statements about watching what he

did with her girls did Poehlman finally understand that she wanted him to be a sex

instructor.  <u>Id</u>. at 697.  Poehlman expressed interest in playing the sex instructor

and eventually, at Sharon's persistence, would graphically detail his ideas for

instruction.  <u>Id</u>.  Plans were then made for Poehlman to travel from Florida to

California to meet Sharon and the girls at a hotel room.  When he stepped into the

room where the girls were supposed to be Poehlman was arrested.  Id.

Poehlman was convicted in federal court of crossing state lines for the

purpose of engaging in sexual acts with minors pursuant to 18 U.S.C. §2423(b) and

subsequently sentenced to 121 months.  Id. at 697.  Poehlman appealed the

conviction on the grounds he was entrapped.  Id.  In arriving at its decision that

Poehlman had been induced, the Ninth Circuit found that it was Sharon who first

suggested that Poehlman have a sexual relationship with her daughters.  Id. at 699.

Poehlman repeatedly indicated he did not understand what she was asking for, but

continued to represent his interests in getting to know her.  Id.  He also maintained

that he would be willing to be a father figure to Sharon's daughters as well as give

them moral guidance.  Id.  The court found "[i]t was only after Sharon made it

clear that agreeing to serve as sexual mentor to her daughters was a condition to

any further communication between her and Poehlman that he agreed to play the

role Sharon had in mind for him."  Id.

In addition, the court recognized that Sharon was the one who forced

Poehlman to be explicit about what he would teach the girls and how their first

lesson would go to help her determine who their teacher would be.  The court

found that the "implication is that unless Poehlman came up with lesson plans that

were sufficiently creative, Sharon would discard Poehlman and select a different

mentor for her daughters." Id. at 699-700 & fn.8.  With every email, Sharon

pushed Poehlman to be more explicit about what he would do with her oldest

daughter.  Id. at 700.  Despite being informed by Sharon that she had no interest in

pursuing a relationship with Poehlman, he continued to establish a relationship and

even proposed marriage on two occasions.  Id. & fn.9.

The court also noted prior case law holding, "where government agents

merely make themselves available to participate in a criminal transaction...they do

not induce commission of the crime...An 'inducement' consists of an 'opportunity'

plus something else–typically, excessive pressure by the government upon the

defendant or the government's taking advantage of an alternative non-criminal type

of motive."  Id. at 701 (internal quotations omitted).  On that basis, the court found

the government induced Poehlman through many forms of manipulation.  Id. at

702.  Sharon not only consented to the activity, but acted as if it was an act of

parental responsibility by making references to her own fond memories of her

sexual mentor.  Id. at 702.  The government also played on his need for an adult

relationship, family, and acceptance of his "special" sexual needs by encouraging

his fantasies about a relationship with Sharon and moving to California.  Id.  The

court, finding lack of predisposition, reversed the decision and remanded for the

Poehlman's release.  Id. at 705.

Similarly, in United States v. Skarie, 971 F.2d 317 (1992), the Ninth

Circuit held that Skarie had been induced to commit a crime where the undercover

repeatedly threatened the defendant and her family in an effort persuade her to

participate in setting up a drug transaction.  In so holding the court recognized the

undercover was the first to suggest the drug transaction, and Skarie only agreed to

participate after two months of harassment and violent threats.  Id. at 320.  In

contrast to both Skarie and Poehlman, however, the Ninth Circuit in United States

v. Tucker, 133 F.3d 1208, 1217 (9th Cir. 1998), found the defendant's claim that

he was entrapped as a matter of law was unfounded because there was no evidence

that he was induced by the government.  Specifically, Tucker claimed that the

government induced him to commit the crimes of extortion and false statements in

a tax return because the government initiated contact and constantly pursued him.

Id.

Tucker was elected the Mayor of Compton in a special election after

the current mayor, his father, passed away.  Id. at 1210.  Macardican, who had

previously refused to pay bribes to the city council to receive a conditional use

permit for his energy project, was recruited by the FBI to aid in an investigation

into political corruption in Compton.  Id.  When Macardian and Tucker were

introduced, it was Tucker who stated the two needed to get together.  Id. at 1210.

The conversations of the meetings between Macardican and Tucker were tape

recorded, whereby Tucker told Macardican to pay-off individuals running for City

Council elections.  Id. at 1211.  On appeal, the court found, contrary to Tucker's

arguments, that Tucker's evidence failed to make it "patently clear" that the

government induced him, as an otherwise innocent person, to commit the crimes

through the use of trickery, persuasion or fraud.  Id.  Rather, the evidence

demonstrated that the defendant initiated the contact with the undercover, that he

mentioned paying-off city council members and issuing payments in the name of a

third party, and that he would be comfortable with the illegal conduct.  Id.

        The instant case is more akin to Tucker than it is to either Poehlman or

Skarie.  Unlike Poehlman or Skarie, the defendant here was not induced by SSA

Laws to commit an illegal act.  SSA Laws did not originate the criminal act and

implant it in Sapp's mind.  Rather, Sapp was merely provided with the opportunity.

Inducement is a repeated or persistent solicitation or persuasion that overcomes the

defendant's reluctance.  See Simas, supra at 462.

        The evidence at trial will demonstrate that it was Sapp who solicited SSA

Laws.  Sapp initiated the contact with SSA Laws, and asked for Bonnie to accept

Sapp's invitation to be on his Yahoo! Messenger contact list. Sapp initiated the

subsequent sexually oriented conversations.  After Sapp learned that Jackie was

fourteen years old, Sapp was undeterred and continued to chat. Sapp disclosed

what he was looking for : "im looking for a nawty gurl who wants sex".  When

Jackie did not outright reject these advances, Sapp became more graphic about

what sexual acts he wanted to participate in with her.  At the onset, Sapp even

acknowledged the illegality of his proposals: "sure...but you realize theres a big

difference in age and if you told someone i'd get in alot of trouble" and "thats why

you could never tell, cause you mom could have me sent to jail for about 20 years."

At no time did Sapp exhibit any kind of reluctance to participate in sexual acts with

the fourteen year old Jackie. His only reluctance was being discovered. At no point

in time during their conversations did SSA Laws ever take control of the

conversation or use threats, promises, coercive tactics, or fraud to persuade Sapp to

commit sexual acts with a fourteen year old girl.  Without evidence of any

inducement by SSA Laws, there would be no reason to even address the issue of

predisposition.

> **b.      Even If Sapp Could Demonstrate He Was Induced by SSA Laws,
> the Government Will Prove the Defendant Was Already
> Predisposed to Commit the Crime**

If the trial court determines that the government has induced an

individual to commit a crime, the prosecution then has the burden of proof beyond

a reasonable doubt to show that the defendant had a predisposition to commit the crime prior to being approached by the government agents.  <u>Davis</u>, 36 F.3d at 1430.  A defendant is considered predisposed to commit a crime if the defendant is willing "to commit the offense prior to being contacted by government agents, coupled with the wherewithal to do so."  <u>Poehlman</u>, 217 F.3d at 698.

Predisposition is established only after analyzing five factors: (1) the character and reputation of the defendant; (2) whether the government made the initial suggestion of criminal activity; (3) whether the defendant engaged in the activity for profit; (4) whether the defendant showed any reluctance; (5) the nature of the government's inducement.  <u>See</u> <u>Davis</u>, at 1430; <u>See</u> <u>also</u> <u>Tucker</u>, 133 F.3d at 1217; <u>United States v. McClelland</u>, 72 F.3d 717, 722 (9th Cir. 1995); <u>Garza-Juarez</u>, 992 F.2d at 908; <u>Skarie</u>, 971 F.2d at 320.  "Although none of these five factors controls, the most important is the defendant's reluctance to engage in criminal activity."  <u>Davis</u>, at 1430.

The government may rely on evidence that occurred after the initial contact with the government agent and during the course of dealing in order to prove the defendant's predisposition.  <u>Tucker</u>, at 1217.  <u>See</u> <u>also</u> <u>Jacobson</u>, 503 U.S. at 551.  "If the defendant is found to be predisposed to commit a crime, an entrapment defense is unavailable regardless of the inducement."  <u>McClelland</u>, at 722.

In <u>McClelland</u>, McClelland hired Russell, a man who worked for his insurance company and lived with him, to kill his estranged wife.  72 F.3d at 719. McClelland initiated the conversations with Russell to harm his wife and discussed numerous plans for accomplishing that goal.  <u>Id</u>.  Eventually, McClelland drew a map of the area where his wife lived in Kansas and had Russell obtain poison.  <u>Id</u>. Russell contacted the FBI in Washington, where he and McClelland resided, and made arrangements to secretly record conversations with McClelland.  <u>Id</u>. at 719-720.  During the subsequent tape-recorded conversation, McClelland displayed some reluctance to go through with the plan by stating he did not know whether he liked the idea and that he was setting himself up as God.  <u>Id</u>. at 720.  After some prompting by Russell to make up his mind, McClelland gave him permission to "go for it."  <u>Id</u>.

McClelland provided Russell with money for an airline ticket to travel to Kansas, the map of the location, a photo of his wife, and helped to construct a device with a Ricin poisoned tack to poke her with.  <u>Id</u>.  Upon Russell's return to Washington, McClelland was arrested, waived his Miranda rights and admitted to the plot to kill his wife.  <u>Id</u>.  The defendant was convicted of use of interstate commerce facilities in the commission of murder-for-hire in violation of 18 U.S.C. § 1958.  <u>Id</u>. at 719.  McClelland appealed, among other things, the trial court's

denial of his motion for judgment of acquittal based on entrapment as a matter of law. Id. at 721.

On appeal, the Ninth Circuit held that the trial court did not err in denying defendant's motion for acquittal based upon an entrapment theory. The court found that in analyzing the five factors relevant to predisposition, there was sufficient evidence from which a reasonable jury could find beyond a reasonable doubt that McClelland was predisposed. Id. at 722-23. Specifically, evidence as to three of the five factors for determining predisposition were satisfied in favor of the government.

While undisputed evidence demonstrated that McClelland was a law-abiding, non-violent citizen, there was also uncontradicted evidence that he was the person that made the initial suggestion of criminal activity. Id. at 723. McClelland may have expressed some reluctance to go through with the plan, but the court found the nature of his reluctance, coupled with the fact that he was instrumental in planning his wife's murder, could lead a jury to conclude his reluctance was not sufficient to warrant a favorable finding of reluctance. Id. Rather, McClelland's reluctance was, at most, "Hamlet-like." "He equivocated and waffled and hesitated." Id.

As to the fourth element, there was evidence in the record that McClelland

could have benefitted financially from the killing because the divorce could have cost him legal fees and alimony.  Id.  Last, the nature of Russell's inducement, while more serious than mere solicitation, merely constituted prodding McClelland to make up his mind.  The court found this was not as severe as threats or offering cash incentives.  Id.  Since three of the five factors favored the government, the most important of which is the defendant's lack of reluctance, the court found the trial court did not err in denying McClelland's motion.

In the present case, elements one and three appear to benefit Sapp.  His character and reputation are not at issue because he is typically a law-abiding citizen.  Sapp also did not stand to gain financially by enticing a child to have sex with him.  Nonetheless, the remaining elements, two, four and five, clearly favor the government.

Under element two, initial suggestion of criminal activity, the government did not initiate contact with Sapp.  SSA Laws had entered a Yahoo! Alaska chat room, and Sapp made the initial contact with SSA Laws when he sent an instant message, asking Jackie for her ASL [age, sex, location].  SSA Laws responded to Sapp's message in the character of his Jackie profile.  SSA Laws wrote that he was a fourteen year old female from Anchorage.  Sapp was more than willing to stay online and chat.

Furthermore, it was Sapp who also made the initial suggestion regarding

sexual conduct.  On the first day of contact, March 10, 2005, Sapp was urging

sexual experimentation, giving advice, and offering to be "gentle' when he had sex

with the 14 year old girl:

local_nawty_boy (6:53:08 PM): think youd want to try real sex?
hot_jackie_14_in_alaska (6:53:18 PM): kinda scary bout that
local_nawty_boy (6:53:28 PM): what scares you?
hot_jackie_14_in_alaska (6:53:38 PM): hurtin an gettn prego
local_nawty_boy (6:53:47 PM): you had a period yet?
hot_jackie_14_in_alaska (6:54:05 PM): no !!!!
hot_jackie_14_in_alaska (6:54:06 PM): Y
local_nawty_boy (6:54:25 PM): you cant get prego if you havent had a period silly
hot_jackie_14_in_alaska (6:54:35 PM): REALLY
hot_jackie_14_in_alaska (6:54:38 PM): REALLY
local_nawty_boy (6:54:57 PM): yeah...and i would be gentle so it wouldn't hurt you....
hot_jackie_14_in_alaska (6:55:15 PM): u gotta promise !!!!!!!!!!!!!!!!!!!!
local_nawty_boy (6:55:33 PM): i swear...if it hurts to much, i would stop ok?
hot_jackie_14_in_alaska (6:55:46 PM): promise
local_nawty_boy (6:55:52 PM): i promise....
hot_jackie_14_in_alaska (6:55:56 PM): thx

The fourth element, whether the Defendant showed any reluctance, also

favors the government.  The only evidence a jury could construe as reluctance is

Sapp's initial failure to appear at their first scheduled meeting.  Yet that reluctance

was fleeting, as Sapp later contacted 14 year old "Jackie" and set up another

meeting at which he did appear.   Like McClelland, such portended reluctance is

insufficient to show any actual reluctance that would negate predisposition and

result in inducement.  Sapp's repeated contacts and his directing the conversation to explicit sexual acts demonstrates leadership, not reluctance.

Element five, the nature of the government's inducement, also favors the government because SSA Laws did not induce the Defendant's criminal behavior. It is clear from the transcripts of the conversation that the defendant controlled its content the entire time.  Nothing SSA Laws did at any time indicates he solicited the behavior, suggested the idea, or had to persuade the Defendant to meet with fourteen year old Jackie to engage in sexual acts.  Even if the government would be found to have induced Sapp, his predisposition to commit the crimes makes an entrapment defense unavailable.

//

//

//

//

//

## VI.    **CONCLUSION**

The United States has attempted through this brief to cover the issues it

anticipates at trial.  However, the government respectfully requests the opportunity

to supplement the record with additional authority if issues arise that are not

adequately addressed herein.

RESPECTFULLY SUBMITTED this 23rd day of January, 2006, at

Anchorage, Alaska.

DEBORAH M. SMITH
Acting United States Attorney

 s/Audrey J. Renschen
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue,  Rm 253
Anchorage, Alaska  99513-7567
Phone:(907) 271-5071
Fax: (907) 271-1500
Email: audrey.renschen@usdoj.gov

I  declare under penalty of perjury that
a true and correct copy of the foregoing
was sent electronically to
Daniel Libby & Kevin Fitzgerald,
the attorneys of record in this case on
January 23, 2006.

 s/Audrey J. Renschen
Assistant U.S. Attorney