Kevin T. Fitzgerald, Esquire
ABA No. 8711085
Ingaldson, Maassen &
Fitzgerald, P.C.
813 W. 3rd Avenue
Anchorage, Alaska 99501
(907) 258-8750
(907) 258-8751 Fax
email: kevin@impc-law.com

Daniel E. Libbey, Esquire
ABA No. 0012105
Libbey Law Offices, LLC
604 West Second Avenue
Anchorage, Alaska 99501
(907) 258-1815
(907) 258-1822 Fax
email: dlibbey@alaska.net

Attorneys for Defendant
Jaimey K. Sapp

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>                            )<br>            Plaintiff,      )<br>                            )<br>                            )<br>vs.                         )<br>                            )<br>JAIMEY KENT SAPP,           )<br>                            )<br>            Defendant.      )<br>_____) | No. 3:05-cr-0064-RRB<br><br>**<u>DEFENDANT JAIMEY SAPP'S</u>**<br>**<u>SENTENCING MEMORANDUM</u>** |

**I. <u>INTRODUCTION</u>**

   The Defendant, Jaimey Kent Sapp, by and through counsel, submits to this Court that his convictions are based on least

PDF created with pdfFactory trial version www.pdffactory.com

serious obscenity offenses, of which the obscenity was not widespread, nor was there any motive for profit or pecuniary gain.  As a result, the guideline sentence for his convictions falls within Zone C of the Federal Sentencing Guidelines, and his Offense Level is no greater than 12.  Moreover, Mr. Sapp submits that he is a very strong candidate for a split sentence which includes community or home confinement.  As such, he requests that the Court impose a sentence within the Offense Level 12 range with a Criminal History Category of I (10-16 months), half of which would be served through community or home confinement.

The Presentence Report identifies three separate offense levels and guideline ranges for the Court to consider in this case, which levels and ranges are as follows: (1) Total Offense Level 12 (10-16 months), (2) Total Offense Level 14 (15-21 months), and (3) Total Offense Level 16 (21-27 months).[1]  As explained in more detail below, the appropriate Offense Level in this case is 12.  The base offense level under U.S.S.G. § 2G3.1(a) is 10.  There is a two level increase for use of a computer under U.S.S.G. § 2G3.1(b)(3), which brings the Offense Level to 12.  Moreover, there is a

---

[1] All three Offense Level calculations in the Presentence Report apply the appropriate Criminal History Category of I.

PDF created with pdfFactory trial version www.pdffactory.com

two level increase for "[d]istribution other than distribution described in subdivisions (A) through (E)" under U.S.S.G. § 2G3.1(b)(1)(F), bringing the Offense Level to 14. Mr. Sapp's acceptance of responsibility, through the plea agreement with the Government, reduces the Offense Level by two levels, resulting in a Total Offense Level of 12 and a guideline range of 10-16 months (Zone C).

The other Offense Level ranges noted in the Presentence Report are not applicable because the Specific Offense Characteristics supporting those levels cannot be proven beyond reasonable doubt, or even, by a preponderance of the evidence.[2] The Total Offense Level 14 relies on a five level increase for "[d]istribution to a minor" under U.S.S.G. § 2G3.1(b)(1)(C). As to the attempted transfer of obscene material to a minor (18 U.S.C. § 1470) respecting "Hot_Jackie" (Senior Special Agent Kevin Laws), Mr. Sapp did not transfer an obscene picture to "Hot_Jackie", but rather, Mr. Sapp sent a link to "Hot_Jackie", which link connected to an obscene picture. Presentence Report ("PSR") at ¶ 16. Moreover, as to the transfer of obscene material respecting "qt_thang0909",

---

[2] *Booker* left the precedent in place requiring proof beyond a reasonable doubt of factors increasing the offense level. *See U.S. v. Booker*, 125 S.ct. 738, 756 (2005).

Defendant's Sentencing Memorandum
<u>United States v. Sapp</u>
Case No. 3:05-cr-0064-RRB

PDF created with pdfFactory trial version www.pdffactory.com

Jane Doe, who created the screen name "qt_thang0909", told the Government on two separate occasions that she didn't remember seeing any obscene picture sent by Mr. Sapp. PSR at ¶¶ 28-30. There is no conclusive proof that "qt_thang0909" ever saw any picture sent by Mr. Sapp. For these reasons, explained in more detail below, the Court will be unable to find "Distribution to a minor" beyond reasonable doubt. Thus, the 5 level increase will not apply.

Finally, the Total Offense Level 16 relies on a seven level increase for "[d]istribution to a minor that was intended to persuade, induce, entice, [or] coerce . . . the minor to engage in prohibited sexual conduct" under U.S.S.G. § 2G3.1(b)(1)(E). The "intent" finding is assumed by the Government from the chat correspondence. There is no corroborating evidence to support the Government's assumption of "intent." In fact, the corroborating evidence supports the finding that Mr. Sapp had no intent to persuade a minor to engage in sexual conduct. For instance, the affidavit of Season Frenzel demonstrates that Ms. Frenzel, a 28 year old woman, engaged in chat correspondence with Mr. Sapp. In fact, Ms. Frenzel agreed to meet Mr. Sapp at her workplace for the purpose of having sex. Despite this graphic chat, however, Ms. Frenzel and Mr. Sapp had no sexual contact whatsoever,

PDF created with pdfFactory trial version www.pdffactory.com

and, the meeting was limited to a handshake. Ms. Frenzel's purpose in agreeing to meet was not to engage in sexual contact, but rather, was prompted by boredom. See Affidavit of Season Frenzel at p. 1.[3] Likewise, Mr. Sapp's purpose in agreeing to meet "Hot_Jackie" was not to engage in sexual contact.

Moreover, at the approximate time Mr. Sapp arrived at the meeting place with "Hot_Jackie", he had an important business meeting to attend, and thus, there was no time to engage in sexual contact. Mary Lou Harris, Vice President of Residential Mortgage, had set the meeting with Mr. Sapp. Ms. Harris had informed Mr. Sapp that the meeting involved resolution of an issue of highest priority to her office, and she called Mr. Sapp because in her experience, he is extremely reliable, and always on time. Affidavit of Mary Lou Harris at pp.1-2. Given this scheduled meeting, Mr. Sapp would not have had time to engage in sexual contact with anyone at the "Hot_Jackie" meeting place.

Further, there is no evidence that Mr. Sapp ever searched for sexually oriented web sites of any nature, nor used words of a sexual connotation during the search of any web sites,

---

[3] Due to scanner technical difficulties, affidavits referenced in this pleading will be filed as soon as possible.

Defendant's Sentencing Memorandum
United States v. Sapp
Case No. 3:05-cr-0064-RRB

PDF created with pdfFactory trial version www.pdffactory.com

and there is no evidence that Mr. Sapp ever engaged in any teen chat rooms. Affidavit of Reed Bovee at pp. 1-2.[4] Therefore, as stated in the Addendum to the Presentence Report at pages 3-4, an evidentiary hearing is necessary to resolve the "intent" issue. Furthermore, such "intent" cannot be proven beyond reasonable doubt, because Mr. Sapp had no such intent.

**II. SENTENCING RECOMMENDATION**

Mr. Sapp respectfully submits a Total Offense Level of 12 under Criminal History Category I, resulting in a sentencing range of 10-16 months, half of which should be served in community or home confinement. In selecting a sentence in this case, the Court is bound by the statutory mandate of 18 U.S.C. § 3553(a), which statute describes the seven factors to be considered in determining the proper sentence. Each of these factors will be analyzed below.

**A. The Offenses are Least Serious Obscenity Offenses and Mr. Sapp has a History of Professionalism and a Respected Character**

The first factor to consider is "the nature and circumstances of the offense and the history and

---

[4] Grant Bovee conducted a similar analysis and reached the same conclusions.

Defendant's Sentencing Memorandum
United States v. Sapp
Case No. 3:05-cr-0064-RRB
Page 6 of 19

PDF created with pdfFactory trial version www.pdffactory.com

characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The offenses are both obscenity offenses under 18 U.S.C. § 1470.

### Mr. Sapp Did Not Possess Child Pornography

There is no evidence that Mr. Sapp possessed child pornography at all. Nor is there evidence he ever searched for sexually oriented web sites or engaged in any teen chat rooms. Affidavit of Reed Bovee at pp. 1-2. Nor is there any evidence that Mr. Sapp was transferring obscene material for profit or pecuniary gain. Respecting "Hot_Jackie", Mr. Sapp transferred a link to an obscene picture, not an actual obscene picture. PSR at ¶ 16. With respect to "qt_thang0909", the person who created this screen name told the Government on two separate occasions that she didn't remember ever seeing an obscene picture sent by Mr. Sapp. As a result, given the substantial gaps in the evidence, the nature and circumstances of the offenses fall into the category of least serious.

### After Mr. Sapp Tried to Walk Away, the Agent Berated and Enticed Mr. Sapp Back in to the Situation

Mr. Sapp never intended to meet with "Hot_Jackie" to engage in sexual contact. In fact, Mr. Sapp completely backed out of one scheduled meeting with "Hot_Jackie". PSR at ¶¶ 18-

Defendant's Sentencing Memorandum
United States v. Sapp
Case No. 3:05-cr-0064-RRB

PDF created with pdfFactory trial version www.pdffactory.com

21.  After Mr. Sapp missed the meeting, the Government Agent, acting as "Hot_Jackie", berated and guilt-tripped Mr. Sapp for failing to show up.  The agent enticed Mr. Sapp to continue to engage in the chat dialog and a meeting in the following exchange on June 20, 2005:

**hot_jackie_14_in_alaska (Mon Jun 20 15:24:26 2005):** you asshole yur jus stuped
**hot_jackie_14_in_alaska (Mon Jun 20 15:24:54 2005):** i waited 4 like an hour 4 you fucker

**Conversation joined at Mon Jun 20 16:39:21 2005.**

**barebackcountryboy (Mon Jun 20 16:39:21 2005):** I just wanted to say I'm sorry and I know youre mad, and you have the right to be. I just got scared of going to jail for screwing around with you. I hope that someday you'll understand. And, if you don't wanna talk to me anymore, I'll understand sweetie. I just got scared. I'm sorry

**Conversation joined at Mon Jun 20 16:40:22 2005.**

**hot_jackie_14_in_alaska (Mon Jun 20 16:40:22 2005): yea WHATEVER you were jus gookin on me**
**hot_jackie_14_in_alaska (Mon Jun 20 16:40:31 2005):** goofin
**barebackcountryboy (Mon Jun 20 16:41:32 2005):** i SWEAR to you that i wasn't....it's just that you don't realize that i can go to jail just having you in my truck
**hot_jackie_14_in_alaska (Mon Jun 20 16:42:05 2005):** yea WHATEVER thats bullshitL-)
**barebackcountryboy (Mon Jun 20 16:43:24 2005):** no its not, ask anybody....I'd get a minimum of 5 years...but I'm sorry you don't understand....one day you will
**hot_jackie_14_in_alaska (Mon Jun 20 16:43:54 2005):** k c ya
**barebackcountryboy (Mon Jun 20 16:45:09 2005):** well, i would have called you to tell you in person, but i obviously couldn't. I just can't understand why youre so mad. I'm trying to be honest with you...
**hot_jackie_14_in_alaska (Mon Jun 20 16:45:53 2005):** cuz yur like never mind i was mad cuz i was sitting htere lookin STUPED waitin 4 u
**barebackcountryboy (Mon Jun 20 16:46:36 2005):** and me saying I'm truly sorry isn't any good?

**Conversation joined at Mon Jun 20 16:47:11 2005.**

**hot_jackie_14_in_alaska (Mon Jun 20 16:47:11 2005): guess not**
**hot_jackie_14_in_alaska (Mon Jun 20 16:47:15 2005):** er maybe i guess
**barebackcountryboy (Mon Jun 20 16:49:13 2005):** well, I'm gonna go....maybe we can chat again smetime if you decide to forgive me....bye sweetie....i did it out of respect for you....i hope you understand someday...bye bye...thanks for talking to me...
**hot_jackie_14_in_alaska (Mon Jun 20 16:49:54 2005):** yea guess you shouldn talk ta ppl on here then :(
**hot_jackie_14_in_alaska (Mon Jun 20 16:49:59 2005):** c ya

```
Defendant's Sentencing Memorandum
United States v. Sapp
Case No. 3:05-cr-0064-RRB
```

PDF created with pdfFactory trial version www.pdffactory.com

Despite Mr. Sapp's attempts to walk away from the situation, the Agent brought him back in by calling him an "asshole" and a "fucker." Moreover, in response to Mr. Sapp's comment that he could go to jail for having "Hot_Jackie" in his truck, the agent replied "yea WHATEVER thats bullshit." The berating and guilt trip was an effort by the Agent to entice Mr. Sapp to continue in the chat correspondence and the meeting. The Agent's enticement is further demonstrated through his final comment on June 20, where he states "yea guess you shouldn't talk to people on here then." For Mr. Sapp, who was trying to walk away, the Agent's statements can only be seen as trying to entice Mr. Sapp back into the situation.

### Mr. Sapp Was Not Using the Internet to Meet People for Sexual Encounters

Turning to the history and characteristics of Mr. Sapp, there is no evidence that suggests Mr. Sapp used chat correspondence to meet with people for sexual encounters. In fact, outside of his showing-up at the meeting place with "Hot_Jackie", there is no evidence Mr. Sapp ever met with anyone through chat except for Season Frenzel. As Ms. Frenzel states in her affidavit, in her chat correspondence with Mr. Sapp, she agreed to meet him at her workplace for the purpose of having sex. Despite this talk, however, their meeting amounted to no sexual contact whatsoever, but was limited to

Defendant's Sentencing Memorandum
United States v. Sapp
Case No. 3:05-cr-0064-RRB

PDF created with pdfFactory trial version www.pdffactory.com

a handshake.  Her purpose in agreeing to meet was prompted by boredom.  Affidavit of Season Frenzel at p. 1.  As with Ms. Frenzel, Mr. Sapp's purpose in agreeing to meet was not to engage in a sexual encounter.

### **Mr. Sapp Had An Important Business Meeting Scheduled at the Time He was to Met "Hot_Jackie", thus, There was No Time to Engage in Sexual Contact**

At the approximate time he showed up at the meeting place with "Hot_Jackie", Mr. Sapp was scheduled to attend an important business meeting, and thus, he had no time to engage in sexual conduct.  As Mary Lou Harris states in her affidavit, she is Vice President of Residential Mortgage, LLC.  She scheduled a meeting with Mr. Sapp on 7/11/2005, to have Mr. Sapp come to her office on 7/12 to resolve issues respecting dedicated circuits in the office.  In setting the meeting, Ms. Harris made it clear to Mr. Sapp that the dedicated circuit issues were of highest priority and needed to be resolved immediately.  The meeting was set for July 12, 2005, between 1:00 p.m. and 1:30 p.m.  Ms. Harris called Mr. Sapp because, in her experience, Mr. Sapp is extremely competent and reliable, and always on time.  She confirmed her meeting with Mr. Sapp on 7/12, between 1:00 p.m. and 1:30 p.m. sometime before noon on 7/12.  Affidavit of Mary Lou Harris at pp. 1-2.  Mr. Sapp arrived at the scheduled meeting place with

PDF created with pdfFactory trial version www.pdffactory.com

"Hot_Jackie" at approximately 1:30 p.m. on 7/12/05. PSR at ¶ 25. At approximately 1:40 p.m., the time Mr. Sapp was arrested, Ms. Harris had her office call Mr. Sapp and leave a message to find out his whereabouts. Harris Affidavit at ¶ 7. Given the nature and importance of this meeting, there was no time to engage in sexual conduct of any nature at the scheduled meeting place with "Hot_Jackie."

### If Mr. Sapp Intended to Engage in Sexual Contact With a Minor, He Would Have Approached the Minor That Walked Towards the Scheduled Meeting Place

If Mr. Sapp had intended to engage in sexual contact with a minor, he would have approached the minor that was walking towards the scheduled meeting place. Mr. Sapp did not approach the minor at all. Rather, Mr. Sapp immediately drove out of the area, and was traveling to a scheduled business meeting on Northern Lights Boulevard when he was arrested by federal agents on the New Seward Highway at the Dowling Road intersection. At the scene of the scheduled meeting with "Hot_Jackie", Federal Agents observed a female, 14 to 16 years old, walking north on John's Road. PSR at ¶ 25. According to one Agent, Mr. Sapp looked directly at the girl. *Id*. It is undisputed, however, that Mr. Sapp immediately drove out of the area.

The Government alleges, however, that SSA Kevin Laws sent

Defendant's Sentencing Memorandum
United States v. Sapp
Case No. 3:05-cr-0064-RRB

PDF created with pdfFactory trial version www.pdffactory.com

a picture to Mr. Sapp of a female Federal Agent when that Agent was 13 years old, which picture was purported to be "Hot_Jackie." PSR at ¶ 16. The image of "Hot_Jackie" was not located on Mr. Sapp's laptop or thumb drive, nor was there evidence that any such image was deleted by Mr. Sapp. Affidavit of Reed Bovee at ¶ 2.A. Therefore, although Agent Laws may have sent a picture of a 13 year old female, there is no evidence that picture was ever received by Mr. Sapp. Indeed, without the picture sent by Agent Laws, Mr. Sapp would have no idea who to look for the scheduled meeting place. The profile page of "Hot_Jackie" did not include a photo of a minor, but instead depicted a cartoon character. If the intent was to have sexual contact with a minor female, and Mr. Sapp did not know what the female looked like, he would have made contact, or at least approach, the minor female that was walking towards the meeting place.

### Mr. Sapp Has a History of Professionalism and a Respected Character

As demonstrated through a number of affidavits on behalf of Mr. Sapp, he has a history of professionalism and a respected character in the community. As to his present employment with Brown's Electrical, Mr. Sapp's manager writes as follows:

[Mr. Sapp] has been such a valuable asset to our

PDF created with pdfFactory trial version www.pdffactory.com

>    store and company and it would be a great hardship
>    to lose him.  I have only known him for a short
>    while but he has become someone I can trust and
>    depend on.  All of the employees here have become
>    very fond of him as a person, teammate, and a
>    friend.  His employment with us would be continued
>    if he were allowed to stay or set up on some sort
>    of work release program.

Affidavit of Jeff Brown at p. 1.  Moreover, Gene Rash, Mr. Sapp's Landlord of seven years writes:

>    I consider Jaimey a friend, and a person I can
>    trust.  He also did a lot of work for us through
>    his company, after hours, to save our owners money.
>    He worked as an electrician, and his work was
>    always done in very satisfactory manner.

Affidavit of Gene T. Rash at p. 1.  Mr. Rash further states that he would trust Mr. Sapp to watch his own children:

>    I do have four kids.  If I needed a sitter to watch
>    any of them, I wouldn't hesitate to call Jaimey.  I
>    have complete trust in him and his wife.

*Id*.  Matilda Yeager, who has known Mr. Sapp approximately seven years, would also trust Mr. Sapp around her own children.  She writes as follows:

>    I have known Jaimey for about 7 years.  I came to
>    know him through his wife, Teresa who at the time
>    was my co-worker.  . . . He's a very loving and
>    caring father and I would trust him around my
>    children anytime.

Affidavit of Matilda W. Yeager at p. 1.  Jerry Gunderson, has known Mr. Sapp more than two years, and would also trust Mr. Sapp around his son:

Defendant's Sentencing Memorandum
<u>United States v. Sapp</u>
Case No. 3:05-cr-0064-RRB

PDF created with pdfFactory trial version www.pdffactory.com

> I have a high opinion of Jaimie and from the time that my wife and I have spent with him both professionally and socially I have no reason to change my opinion of him.
>
> On at least one occasion while Jaimey was working at our multi plex, my son, a minor at the time, was working with me. At no time would I or did I question that my son would not be safe around Jaimey.

Affidavit of Jerry Gunderson at p. 1. And Sara Engibous, who hired Mr. Sapp, shares her thoughts respecting his competence and professionalism in the following statements:

> Jaimey didn't just meet the expectations of my requests, but definitely proved himself to be one of the diligent few who exceeds - not by a little - but by miles. My home, initially filled with frustrations and inconveniences, has been transformed by his willingness to help, his electrical skill, and a rarely found trait to absolutely do the best job possible.
>
> My husband and I are exceedingly grateful for Jaimey. He made significant improvements for us in our home with a work ethic that radiated professionalism - no job was too small and everything would be completed to a standard of excellence. Jaimey worked cheerfully and completed every task with dependability, timeliness, and complete honesty.

Affidavit of Sara Engibous at p. 1. The above comments demonstrate that Mr. Sapp is regarded very highly, both professionally and personally. Furthermore, they demonstrate that Mr. Sapp is not a threat to minors, as a number of people

Defendant's Sentencing Memorandum
United States v. Sapp
Case No. 3:05-cr-0064-RRB

PDF created with pdfFactory trial version www.pdffactory.com

would trust Mr. Sapp around their own children.

**B. <u>The Sentence Shall be Sufficient, But Not Greater Than Necessary</u>**

The second factor under 18 U.S.C. § 3553(a)(2) states as follows:

> (2) the need for the sentence imposed–
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

As explained in § 3553(a), however, "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The different guideline ranges covered under § 3553(a)(4), and discussed in the Presentence Report ensure that a sufficient sentence is imposed, but not greater than necessary. Moreover, the need for treatment in this case can best be addressed through community treatment options rather than through the Bureau of Prisons. A solid outpatient program would best suit Mr. Sapp's treatment needs, and a lengthy sentence of incarceration would prevent such treatment

Defendant's Sentencing Memorandum
<u>United States v. Sapp</u>
Case No. 3:05-cr-0064-RRB

PDF created with pdfFactory trial version www.pdffactory.com

as being an option.

### C. Kinds of Sentences and Sentencing Ranges Available

Under 3553(a)(3) and (a)(4), the Court is to consider the kinds of sentences and ranges available, which sentences and ranges have already been identified in the Presentence Report, and in the Introduction above. The guideline range for obscenity is discussed in U.S.S.G. § 2G3.1. Moreover, Mr. Sapp's Criminal History Category is Level I. Therefore, Mr. Sapp's sentence will fall within one of three ranges: 1) Total Offense Level 12, 10-16 months (Zone C); 2) Total Offense Level 14, 15-21 months (Zone D); or Total Offense Level 16, 21-27 months (Zone D).

As discussed above, the defense believes the appropriate offense level is 12, with half the sentence being served in community or home confinement. If the Court determines the sentence to fall within Zone D of the guidelines, the defense submits that half the sentence should be served in community or home confinement. Because the guidelines are now advisory, U.S.S.G. § 5C1(d) has been applied to sentences falling within Zone D. *See U.S. v. Anderson*, 365 F.Supp.2d 67, 68-9 (D. Me. 2005) (imposing Zone D split sentence of 9 months imprisonment and 9 months home confinement).

### D. The Obscenity Offenses Are Least Serious Because,

PDF created with pdfFactory trial version www.pdffactory.com

**Pursuant to Guideline Policy, Most Obscenity Cases  Involve Distribution for Pecuniary Gain, Which Is Not Present Here**

The fifth factor to consider is any pertinent policy statement by the Sentencing Commission.  18 U.S.C. § 3553(a)(5).  The guideline establishes a minimum five level increase from the Base Level of 10 for obscenity distributed for pecuniary gain.  U.S.S.G. § 2G3.1(b)(1)(A) (stating a minimum five level increase under § 2B1.1 based on the value of profit).  Moreover, the Sentencing Commission states the policy behind the guideline as follows: "Most federal prosecutions for offenses covered in this guideline are directed to offenses involving distribution for pecuniary gain.  Consequently, the offense level under this section generally will be at least 15."  There is no evidence that Mr. Sapp was in the business of distributing obscene material, or that he has distributed material for profit.  Therefore, the pertinent policy speaks to the Total Offense Level being least serious, and less than 15 in this case.

**E. The Kinds of Sentences and Ranges Available avoid Unwarranted Sentence Disparities**

The sixth factor seeks to avoid unwarranted sentence disparities.  18 U.S.C. § 3553(a)(6). Such unwarranted disparities can be avoided through the sentences and ranges

PDF created with pdfFactory trial version www.pdffactory.com

discussed above, and in the Presentence Report. Moreover, the Government's request for an upward departure is based on attempted enticement of a minor, which attempted enticement charges were dismissed pursuant to the plea agreement in this case. Furthermore, the upward departure is not an appropriate cross reference under the obscenity guideline, nor is there any guideline or statutory authority for the Government's departure. U.S.S.G. § 2G3.1(c)(1); 18 U.S.C. § 3553(b)(2)(A)(i). As a result, the applicable guideline ranges discussed above, and in the Presentence Report, serve to avoid unwarranted disparity in sentences.

The seventh factor addresses the need to provide restitution to victims, which factor is not applicable in this case.

### III. CONCLUSION

Mr. Sapp submits that his Total Offense Level is 12. Under a Criminal History Category of I, his applicable sentencing range is 10-16 months, with half that time to be served as community or home confinement. Such a sentence allows him to seek the appropriate treatment plan and it allows him to continue to serve the community and the electrical profession with respect and high esteem.

Defendant's Sentencing Memorandum
United States v. Sapp
Case No. 3:05-cr-0064-RRB

PDF created with pdfFactory trial version www.pdffactory.com

Respectfully submitted at Anchorage, Alaska this 8th day of May, 2006.

LIBBEY LAW OFFICES, LLC
Co-Counsel for Defendant

By: s/Daniel E. Libbey
Daniel E. Libbey (0012105)
604 West Second Avenue
Anchorage, Alaska 99501
(907) 258-1815
(907) 258-1822 Fax
email: dlibbey@alaska.net

This is to certify that the foregoing (including accompanying proposed order) is being delivered electronically to:

Audrey Renschen (counsel for the Government)
Kevin Fitzgerald (co-counsel for the Defendant)

On: 5/8/2006  By: s/Daniel E. Libbey

\\Dan\c_dan\Dan_Data\NonOPACrim\U.S. v. Jaimey Sapp\Pleadings\sentence.memo.08may2006.wpd

Defendant's Sentencing Memorandum
United States v. Sapp
Case No. 3:05-cr-0064-RRB
Page 19 of 19

PDF created with pdfFactory trial version www.pdffactory.com